## Ledig *v.* Germania Brewing Company, Appellant.

*Negligence—Fall of beer barrel from wagon on passer-by.*

In an action to recover damages for personal injuries caused by a beer barrel falling from defendant's wagon upon plaintiff, it is proper to submit the case to the jury where there is evidence, though contradicted, that the wagon was overloaded, and that defendant's driver in turning from the car track on which he was driving " at a pretty good gait " gave his horses a crack with his whip, and by that, swung the hind part of the wagon into the curbstone, causing one of the barrels to fall upon plaintiff.

Argued Jan. 11, 1893. Appeal, No. 35, July T., 1892, by defendants, from judgment of C. P. No. 1, Phila. Co., Sept. T., 1888, No. 253, on verdict for plaintiff, Robert Karl Ledig, by his next friend. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Trespass for personal injuries.

Plaintiff's statement averred that on July 16, 1888, defendant so carelessly loaded and secured a number of kegs or barrels upon one of its wagons, and so carelessly drove the said wagon along Eighth street, between Cherry and Race street, in the city of Philadelphia, that by reason thereof a number of kegs or barrels were violently thrown from the said wagon upon or against plaintiff, who was lawfully walking along the pavement of the said street, and by means thereof plaintiff was crushed, cut, hurt, and permanently injured and disabled.

At the trial, before BRÉGY, J., a policeman, called on behalf of plaintiff, testified as follows :

" Did you have a conversation with the driver Bateman about his load and how the wagon came to be overloaded ? A. In taking the wagon to the Germania brewery at Broad street and Columbia avenue, I drove up with him on the wagon, and I asked him how it was that he had such a big load on. He allowed that his route was in Camden, and that he served beer at different points, and that, it being Monday, he collected the Saturday night and Sunday barrels, and brought as many as he possibly could, being such a long distance from the brewery. That was the conversation I had with him. He told me that there were forty-three or forty-five half barrels that he had on . . . . Q. How high were they on the wagon ? A. I did

not notice, but they were piled up.   Q. In how many rows? A. They were not piled in rows, but were lying on their side. Q. Clean up to the top?   A. Yes, sir; they were in a kind of a pyramid up to the skids on the side."

William H. Lutz, a witness for plaintiff, described the accident as follows:

"I got on car No. 81 of the Eighth street line at Walnut street.   After I get on a car I generally go through and stand on the front platform.   I went up there, and I happened to know the driver, and I spoke to him.   Above Market street a beer wagon was in front of the car.   He blew his whistle twice for it to get off the track, but the man didn't get off.   Then, as we got to Arch street, he blew again.   When the beer wagon was on the upper side of Arch street he pulled to the left, and pulled out of the track, all except one hind wheel.   But before we knew what he was going to do he had swung in again; then the driver blew for him to get out of the road, but he just kept on the track.   There were some wagons that pulled out, but there were some carts that were in ahead of him.   Then the driver blew again, and just before he got to the little street the driver pulled out, and as he pulled out he took his whip and gave the horses a crack with the whip.   He was going at a pretty good gait at the time.   Q. You say that he was going at a pretty good gait?   A. Yes, sir; he whipped the horses, and by that he swung the hind part of the wagon into the curbstone.   Then the first barrel went off and struck the boy on the back of the neck."

Evidence on behalf of the defendant tended to show that the wagon was not overloaded, and that the driver was moving at a slow rate of speed when he pulled out from the car track, and that the street was in bad condition at the place where the accident occurred.

Defendant's request for binding instruction was refused. [6]

Verdict and judgment for plaintiff for $5,000.   Defendant appealed.

*Error assigned*, inter alia, was (6) instruction, quoting it.

*Samuel Gustine Thompson, Thomas R. Elcock* with him, for appellants, cited Chartiers Township v. Phillips, 122 Pa. 611; Perkins v. Fayette, 68 Me. 155; Moulton v. Sanford, 51 Me.

131; Titus v. Northbridge, 97 Mass. 258; R. R. v. Jones, 95 U. S. 439; Schaeffer v. Jackson Twp., 150 Pa. 145.

*John G. Johnson,* for appellee, was not heard.

PER CURIAM, January 23, 1893:
Judgment affirmed.


# Sandford *v.* Hestonville, Mantua & Fairmount Pass. Ry., Appellant.

*Negligence—Infants—Street railways.*

In an action against a street railway company for personal injuries to a boy eight years old, the case is properly submitted to a jury where there is evidence that the boy was upon the front platform of a car, and while there a dispute arose between him and the conductor about a transfer ticket, that the conductor approached the boy in such a manner as to frighten him, and that he jumped off the car by reason thereof, and was injured.

Argued Jan. 11, 1893. Appeal, No. 80, July T., 1892, by defendant, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1887, No. 524, on verdict for plaintiff, John H. Sandford, a minor, by his next friend John Sandford. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ. (Here before, 136 Pa. 84.)

Trespass for personal injuries.

At the trial, before THAYER, P. J., it appeared that plaintiff, a boy eight years old, was injured on Oct. 23, 1889, by falling or stepping from the front platform of one of defendant's cars. At the time of the accident plaintiff was on his way from Fairmount Park, and had been transferred at the company's depot from one car to another. He took his place on the front platform, and when the conductor demanded his fare a dispute arose as to whether he had been transferred from the other car. There was evidence that the conductor approached him in such a way as to frighten him, and that he stepped back and fell from the car.

The court charged in part as follows:

" The negligence imputed by the plaintiff in this case to the defendant is that he was permitted to ride upon the front platform of this car with the knowledge of the conductor, and that